**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Case No.:
CLASS REPRESENTATION

KELLY AGER, f/k/a KELLY WALL, on behalf of herself and all others similarly situated,

      Plaintiff,

-vs-

QUEST DIAGNOSTICS INCORPORATED, a foreign for-profit corporation, MERIDIAN FINANCIAL SERVICES, INC. a foreign for-profit corporation, and CREDIT CONTROL SERVICES, INC. D/B/A CREDIT COLLECTION SERVICES, a foreign for-profit corporation,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Kelly Ager f/k/a Kelly Wall ("Plaintiff"), hereby sues Defendants, Quest Diagnostics Incorporated ("Quest"), Meridian Financial Services, Inc. ("Meridian Financial"), and Credit Control Services, Inc. d/b/a Credit Collection Services ("CCS"), for damages resulting from breach of contract and Defendants' violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Fair Debt Collection Practices Act ("FDCPA"), and in support thereof states the following.

## INTRODUCTION

1.    Plaintiff brings this action on behalf of herself and all those similarly situated, seeking damages against Defendants for abusive and illegal billing practices. Specifically, after entering into payment plans with consumers, Defendant systematically stopped accepting

payments from those consumers—who were current on their bills—and sent those consumers to collections.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a natural person and citizen of the state of Florida, residing in Polk County, Florida.

3. Quest Diagnostics is a foreign corporation incorporated in the State of Delaware with its principal place of business located in the State of New Jersey.

4. Quest Diagnostics is a conglomerate comprising clinical laboratories that provide laboratory services to consumers across the United States, Mexico, and Brazil.

5. Meridian Financial Services, Inc. is a foreign corporation incorporated in the State of North Carolina with its principal place of business located in the State of North Carolina.

6. Credit Control Services, Inc. d/b/a Credit Collection Services is a foreign corporation incorporated in the State of Massachusetts with its principal place of business in the State of Massachusetts.

7. Jurisdiction of this Court arises under 28 U.S.C. § 1331, granting this Court original subject matter jurisdiction over claims made under the federal Fair Debt Collection Practices Act, and under 28 U.S.C. § 1367, granting this Court supplemental jurisdiction over state law claims which are related to any original jurisdiction claims.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

9. Plaintiff is a "consumer" as defined by the FCCPA.

10. Defendants are "person[s]" as contemplated by the FCCPA.

11. CCS and Meridian Financial are "debt collector[s]" under the FDCPA.

12.     This Court has personal jurisdiction over Defendants under Section 48.193, Florida Statutes because Defendants a) operate, conduct, engage in, or carry on businesses in this state and b) committed tortious acts in this state. Furthermore, though Defendants are foreign corporations, this Court's exercise of jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

13.     Any necessary conditions precedent to bringing this action have either occurred or have been waived.

## LEGAL BACKGROUND

a.     FLORIDA CONSUMER COLLECTION PRACTICES ACT.

14.     The FCCPA, Section 559.72, Florida Statutes, *et. seq*, was adopted to reinforce the consumer rights established by federal law for individuals who owe money to others.

15.     The FCCPA does not limit or restrict the continued applicability of the federal Fair Debt Collection Practices Act (hereinafter "FDCPA") to consumer collection practices in this state, but rather, is in addition to the requirements and regulations of the federal act.

16.     In the event of any inconsistency between the FCCPA and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail.

17.     The FCCPA applies to all persons trying to collect monies from consumers, this includes original creditors and debt collectors.

18.     Section 559.72(9), Florida Statutes states, *inter alia*:

> In collecting consumer debts, no person shall: "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist."

19.     The FCCPA, prohibits the collection of amounts that are not agreed to by contract or expressly provided for by law.

**b.**     **THE FAIR DEBT COLLECTION PRACTICES ACT**

20.     The FDCPA was adopted to regulate the practices and tactics of corporations engaged in the collection of debts for others.

21.     As with Florida's FCCPA, the FDCPA, 15 U.S.C. 1692(f)(1), specifically prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

22.     The FDCPA, 15 U.S.C. 1692(e)(2)(A), also prohibits "The false representation of . . . the character, amount, or legal status of any debt."

23.     Importantly, the FDCPA is a strict liability statute, and the consumer need not show that the violation was knowing or intentional.[1]

24.     The FDCPA and the FCCPA prohibit the collection of amounts that are not agreed to by contract or expressly provided for by law.

## <u>FACTUAL ALLEGATIONS</u>

**a.**     **DEFENDANT'S TREATMENT**

25.     Quest is a diagnostic laboratory that provides medical lab testing to consumers.

26.     On July 1, 2021, Plaintiff had lab tests performed by Quest.

**b.**     **THE PAYMENT PLAN**

27.     While Plaintiff's insurance covered most of the billed amount for Quest's medical services, it did not cover Quest's services entirely. Consequently, Plaintiff incurred a debt to Quest totaling $702.94 (the "The Consumer Debt").

28.     On October 12, 2021, Plaintiff and Quest entered into a payment plan for Plaintiff's Consumer Debt. The payment plan comprised nine (9) monthly payments of $78.11 to

---

[1] *Pollack v. Bay Area Credit Serv., L.L.C.*, 2009 WL 2475167 (S.D. Fla. Aug. 13, 2008).

be deducted automatically from Plaintiff's bank account. A true and correct copy of an email from Quest to Plaintiff is attached hereto as **Exhibit A**.

29.     As with all members of the putative class, this payment plan was noted in Quest's system and its existence is easily ascertained.

30.     In accordance with the payment plan, the monthly payment was deducted automatically from Plaintiff's bank account in October, November, and December of 2021. *See* Plaintiff's Bank Account Statements, true and correct copies of which are attached hereto as **Exhibit B**.

31.     The payments were deducted from Plaintiff's bank account by the 13th or 14th of the month.

32.     However, by January 19, 2022, the January 2022 payment had not been deducted from Plaintiff's bank account.

33.     Therefore, true to her responsibilities, Plaintiff logged into Quest's online payment portal and paid the required payment that same day.

     c.   **DEFENDANT BREACHES THE PAYMENT PLAN AND UNEXPECTEDLY SENDS THE REMAINDER DUE TO COLLECTIONS WITHOUT WARNING TO PLAINTIFF OR THE MEMBERS OF THE PUTATIVE CLASS**

34.     Once again in February of 2022, the February payment was not deducted by February 18, 2022.

35.      Once again, Plaintiff logged into the Quest portal and attempted to pay the February payment.

36.     However, to Plaintiff's distress, the portal no longer allowed her to make a payment.

37.     Instead, the portal informed Plaintiff that, despite her timely payments, her account had been sent to collections.

38.     To find out what had gone wrong, Plaintiff called Quest at (866) 254-3859 to inquire why the payment had not been processed in accordance with the Payment Plan and why her account had been sent to collections—indeed, she was current on all obligations. A true and correct copy of Plaintiff's phone history is attached hereto as **Exhibit C**.

39.     In response, a Quest customer service representative informed Plaintiff that Quest had knowingly implemented a change in their billing system that had caused a "system-wide error."

40.     Plaintiff was informed that this "error" caused her account, and the accounts of others similarly situated, to be sent to collections irrespective of timely payments.

41.     Realizing the severity of the situation, and with actual knowledge of the fact that Plaintiff did not default on her obligations, Quest's customer service representative assured Plaintiff that all would be rectified and that she would receive a letter explaining the issue and how Quest planned to remedy it.

### d. PLAINTIFF BEGINS RECEIVING UNSOLICITED PHONE CALLS FROM MERIDIAN FINANCIAL

42.     A month later, Plaintiff had yet to receive any such letter or any communication from Quest regarding her account, the unexpected referral to collections, or how Quest planned to address the situation.

43.     Instead, despite having and conveying its actual knowledge that Plaintiff was not in default of her obligations Quest, through its debt collector, Meridian Financial, began making incessant collection calls to Plaintiff.





**e.   MORE EMPTY PROMISES TO RECTIFY THE SITUATION**

44.   Because she had yet to receive a letter or any communication from Quest, and because she was receiving collection calls, on March 14, 2022, Plaintiff again reached out to Quest.

45.     Plaintiff again spoke with a customer service representative, who again informed her that Quest knew of the problem and knew that Plaintiff and others were sent to collections despite timely payments. The customer service representative assured Plaintiff that the previously promised letter was forthcoming.

46.     Plaintiff further informed the customer service representative of the incessant calls by Meridian Financial. The customer service representative indicated Quest was aware of the situation and would direct all debt collectors to cease contacting consumers who were current on their payment plans. Therefore, Meridian Financial has, at all times relevant hereto, had actual knowledge of the illegitimacy of the debt it was attempting to collect from Plaintiff and the members of the putative class.

47.     Plaintiff waited two more weeks until she decided she had enough. After patiently waiting for over a month and a half and enduring countless robocalls, on March 28, 2022, Plaintiff again contacted Quest. *See* Exh. C. This time, she requested to speak to someone in a position of authority who could take action to resolve the situation. Quest's customer service representative informed Plaintiff she would receive a call from a supervisor.

48.     Later that night, Plaintiff received a call from a Quest employee: a woman by the name of Peggy Every. *Id.*

49.     Peggy assured Plaintiff that Quest had identified all individuals who were improperly sent to collections and that letters had gone out to all of them. Peggy assured Plaintiff that Plaintiff would receive a letter forgiving her remaining balance as compensation for her troubles.

50.     Plaintiff, however, never received such a letter.

51.    Plaintiff called Peggy Everly several times and left voicemails, but she never heard from "Peggy Everly" ever again—nor any other Quest employee regarding her account.

**f.   QUEST REFERS PLAINTIFF'S ACCOUNT TO CCS**

52.    On January 30, 2022, Plaintiff received a collection letter from CCS for $390.50—the remaining amount of the Consumer Debt after the October, November, December, and January payments. A true and correct copy of the collection letter is attached hereto as **Exhibit D.**

53.    These are the same payments that Defendant itself had prevented Plaintiff from paying and the same payments that Defendant promised were waived.

54.    Put differently, Defendant prevented Plaintiff from making timely payments pursuant to an agreed upon payment plan, then sent Plaintiff to collections. Thereafter, Defendant purportedly waived Plaintiff's balance, but sent her to collections again to collect an amount Defendant knew Plaintiff did not owe.

**g.   DEFENDANTS' ACTUAL KNOWLEDGE**

55.    As amply displayed above, Quest has actual knowledge of the illegitimacy of the debt it attempted (and is still attempting) to collect from Plaintiff and the Members of the Putative Class. Indeed, Plaintiff informed Quest about the issue no less than eight (8) different times, as early as February 18, 2022. *See* Exh. C.

56.    And, dating back to February 18, 2022, Quest employees informed Plaintiff that Quest was aware of the issue, that it happened to an identifiable list of customers, and that it was working to rectify it.

57.    Not only did Quest fail to rectify the problem, it referred Plaintiff's account to Meridian Financial and CCS for collection.

58.     As stated *supra*, Plaintiff informed Quest of the incessant calling by Meridian Financial. In response, Quest told Plaintiff it would direct all debt collectors to cease all communications with all persons current on their payment plans. However, Meridian Financial never ceased its collection attempts from Plaintiff and the putative class on behalf of Quest. Thus, Meridian Financial has, at all times relevant hereto, had actual knowledge of the illegitimacy of the debt it was attempting to collect from Plaintiff and the members of the putative class.

59.     Similarly, CCS has, at all times relevant hereto, had actual knowledge of the illegitimacy of the debt it was attempting to collect from Plaintiff and the members of the putative class—as Quest represented it informed "all debt collectors" of the issue and directed all such debt collectors to stop engaging in collection attempts from Plaintiff and the members of the putative class.

60.     All conditions precedent to the filing of this action have occurred or have been waived.

61.     Plaintiff has retained the undersigned law firm and owes them a reasonable fee for their services.

## CLASS REPRESENTATION ALLEGATIONS

62.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of herself and the Class of similarly situated individuals defined as follows:

### FCCPA CLASS

All Florida residents who/whom, within two (2) years preceding the filing of this action through the date of class certification, (1) had payment plans with Quest for payment of a bill over time, (2) were current on payments on that payment plan, and (3) Defendant or a third party on behalf of Defendant sent correspondence attempting to collect the full balance of the bill.

## FDCPA SUBCLASS

All Florida residents who/whom, within one (1) year preceding the filing of this action through the date of class certification, (1) had payment plans with Quest for payment of a bill over time, (2) were current on payments on that payment plan, and (3) a third party on behalf of Defendant sent correspondence attempting to collect the full balance of the bill.

***Plaintiff anticipates the need to amend the class definitions following appropriate discovery.***

63.     **Class Exclusions:** The following people are excluded from the Class: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and its current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the Class; 4) the legal representatives, successors, or assigns of any such excluded persons; 5) Plaintiff's counsel and Defendants' counsel; and 6) any person whom Defendants can prove through affirmative evidence was properly billed.

64.     **Numerosity:** Although Plaintiff does not know the exact size of the Class, since said information is in the exclusive control of Defendants, it is evident that the Class is so numerous that joinder of all members into one action is impracticable. Defendant bills patients through a uniform system and methodology. Indeed, Defendant's represented that the problem was "system-wide" and thus the conduct was repeated many times over. Based upon the nature and scope of the conduct involved herein, and the information available from public records, Plaintiff states that the approximate number in the Class is in excess of five hundred (500) putative members, who are most likely geographically dispersed throughout Florida.

65.     **Typicality:** Plaintiff's claims are typical of the claims that would be asserted by other members of the Class in that, in proving her claims, Plaintiff will simultaneously prove the

claims of all Class members. Defendant attempted to collect, from Plaintiff and each Class member, a debt that Quest knew was illegitimate and/or asserted a right it knew did not exist. Plaintiff's claims are typical of those of all members of the Class—again, Quest stated it was "system wide". Plaintiff and all members of the Class were damaged by the same conduct of Defendant as complained of herein.

66.    **Commonality:** Plaintiff's and Class members' claims raise predominantly factual and legal questions that can be answered for all Class members through a single Class-wide proceeding.  Questions of law and fact arising out of Defendant's conduct are common to all members of the Class, and such common issues of law and fact predominate over any questions affecting only individual members of the Class.  For example, to resolve the claims, it will be necessary to answer the following questions, each of which can be answered through common, generalized evidence:

(a)  Whether Defendants violated the FCCPA and the FDCPA by attempting to collect the full balance owed from consumers on valid payment plans;

(b)  Whether Plaintiff and the Class are entitled to actual damages as a result of Defendant's actions;

(c)  Whether Plaintiff and the Class are entitled to statutory damages as a result of Defendant's actions;

(d)  Whether the Plaintiff and the Class are entitled to attorney's fees and costs; and

(e)  Whether Defendant should be enjoined from engaging in such conduct in the future.

67.   **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class she represents because it is in her best interests to prosecute the claims alleged to obtain full redress due to her for the illegal conduct of which she complains.  Her interests do not conflict with the interests of the respective Classes because one or more questions of law and/or fact regarding liability are common to all class members and by prevailing on her own claims, Plaintiff necessarily will establish liability to other class members.  Plaintiff will fairly and adequately represent the interests of the Class and has no interests that are antagonistic to the interests of Class members.  Plaintiff has retained counsel experienced in class action litigation and complex civil litigation to prosecute this action on behalf of the Classes.

68.   **Superiority:** A class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted herein, given that Common questions of law and fact predominate over any individual questions that may arise, and significant economies of time, effort and expense will inure to the benefit of the court and the parties litigating the common issues on a Class-wide basis instead of a repetitive individual basis;  many Class members' individual damage claims are too small to make individual litigation an economically viable alternative, and few Class members have an interest in individually controlling the prosecution of a separate action; despite the relatively small size of many individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a Class action on a cost-effective basis, especially when compared with repetitive individual litigation; given the size of individual Class members' claims,  few Class members could afford to seek legal redress individually for the wrongs Defendant committed against them; when the liability of Defendant is adjudicated, claims of all members of the Class can be determined by the Court; this action

will facilitate the orderly and expeditious administration of the Class's claims, economies of time, effort and expense will be fostered and uniformity of outcome will be ensured; without a class action, the Class members will continue to suffer damages and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the proceeds of its wrongful conduct; and  no unusual difficulties are likely to be encountered in the management of this class action.

69.     **Ascertainability:** Members of the Class can be identified, and Class membership ascertained objectively through Defendant's records. In-fact Quest represented to Plaintiff that the class—as defined—had already been identified and Quest had already sent correspondence to each class member.

70.     Plaintiff satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party pursuant to Fed. R. Civ. P. 23(a) and (b).

**COUNT – I**
**VIOLATION OF FCCPA, SECTION 559.72 (9), FLORIDA STATUTES**
*Defendant Quest Diagnostics*

Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

71.     By asserting the right to and attempting to collect from Plaintiff and the class the total balance of a debt that was part of a payment plan, Quest claimed, attempted, or threatened to enforce a debt when Quest knew that the debt was not legitimate, and asserted the existence of a legal right when Quest knew that the right did not exist.

72.     Quest therefore violated the FCCPA, Section 559.72(9), Florida Statutes.

73.     As a direct and proximate result of Quest's actions, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and the Class and against Defendant Quest:

      a.    certifying the instant case as a class action pursuant to Fed. R. Civ. P. 23;

      b.    appointing Plaintiff as class representative and the undersigned attorneys as class counsel;

      c.    awarding Plaintiff and the class actual and statutory damages pursuant to Section 559.77(2), Florida Statutes;

      d.    awarding Plaintiff and the class attorneys' fees and litigation costs pursuant to Section 559.77(2), Florida Statutes; and

      **e.**    awarding further relief as the Court deems just and proper.

<u>**COUNT – II**</u>
**VIOLATION OF FDCPA, 15 U.S.C. 1692(f)(1)**
*Defendant CCS*

Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

74.    By asserting the right to and attempting to collect from Plaintiff and the class the total balance of a debt that was part of a payment plan, CCS attempted to collect a debt that was not owed.

75.    CCS therefore violated 15 U.S.C. 1692(f)(1)) and is strictly liable for such violation.

76.    As a direct and proximate result of CCS's actions, Plaintiff and the Class suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and the Class and against Defendant CCS:

a.      certifying the instant case as a class action pursuant to Fed. R. Civ. P. 23;

b.      appointing Plaintiff as class representative and the undersigned attorneys as class counsel;

c.      awarding Plaintiff and the class actual and statutory damages under the FDCPA;

d.      awarding Plaintiff and the class attorneys' fees and litigation costs under the FDCPA; and

**e.**      awarding further relief as the Court deems just and proper.

<u>**COUNT – III**</u>
**VIOLATION OF FDCPA, 15 U.S.C. 1692(f)(1)**
*Defendant Meridian Financial*

Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

77.    By asserting the right to and attempting to collect from Plaintiff and the class the total balance of a debt that was part of a payment plan, Meridian Financial attempted to collect a debt that was not owed.

78.    Meridian Financial therefore violated 15 U.S.C. 1692(f)(1) and is strictly liable for such violation.

79.    As a direct and proximate result of Meridian Financial's actions, Plaintiff and the Class suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and the Class and against Defendant Meridian Financial:

a.      Certifying the instant case as a class action pursuant to Fed R. Civ. P. 23;

b.      appointing Plaintiff as class representative and the undersigned attorneys as class counsel;

c.      awarding Plaintiff and the class actual and statutory damages under the FDCPA;

d.      awarding Plaintiff and the class attorneys' fees and litigation costs under the FDCPA; and

**e.**      awarding further relief as the Court deems just and proper.

<u>**COUNT – IV**</u>
**VIOLATION OF FCCPA, SECTION 559.72 (9), FLORIDA STATUTES**
*Defendant CCS*

Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

80.      By asserting the right to and attempting to collect from Plaintiff and the class the total balance of a debt that was part of a payment plan, CCS claimed, attempted, or threatened to enforce a debt when CCS knew that the debt was not legitimate, and asserted the existence of a legal right when CCS knew that the right did not exist.

81.      CCS therefore violated the FCCPA, Section 559.72(9), Florida Statutes.

82.      As a direct and proximate result of CCS's actions, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and the Class and against Defendant CCS:

a.      certifying the instant case as a class action pursuant to Fed. R. Civ. P. 23;

b.      appointing Plaintiff as class representative and the undersigned attorneys as class counsel;

c.      awarding Plaintiff and the class actual and statutory damages pursuant to Section 559.77(2), Florida Statutes;

d.      awarding Plaintiff and the class attorneys' fees and litigation costs pursuant to Section 559.77(2), Florida Statutes; and

**e.**      awarding further relief as the Court deems just and proper.

<u>**COUNT – V**</u>
**VIOLATION OF FCCPA, SECTION 559.72 (9), FLORIDA STATUTES**
*Defendant Meridian Financial*

Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

83.      By asserting the right to and attempting to collect from Plaintiff and the class the total balance of a debt that was part of a payment plan, Meridian Financial claimed, attempted, or threatened to enforce a debt when Meridian Financial knew that the debt was not legitimate, and asserted the existence of a legal right when Meridian Financial knew that the right did not exist.

84.      Meridian Financial therefore violated the FCCPA, Section 559.72(9), Florida Statutes.

85.      As a direct and proximate result of Meridian Financial's actions, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and the Class and against Defendant Meridian Financial:

a.      certifying the instant case as a class action pursuant to Fed. R. Civ. P. 23;

b.      appointing Plaintiff as class representative and the undersigned attorneys as class counsel;

c.      awarding Plaintiff and the class actual and statutory damages pursuant to Section 559.77(2), Florida Statutes;

d.      awarding Plaintiff and the class attorneys' fees and litigation costs pursuant to Section 559.77(2), Florida Statutes; and

e.      awarding further relief as the Court deems just and proper.

## JURY TRIAL REQUEST

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests a jury trial on issues so triable.

Respectfully submitted this 9th day of February, 2023, by:

ZEBERSKY PAYNE SHAW LEWENZ, LLP
110 SE 6th Street, Suite 2900
Fort Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary: jshaw@zpllp.com;
kslaven@zpllp.com
gmorales@zpllp.com
Secondary: cpagan@zpllp.com;
clanzano@zpllp.com

By:

JORDAN A. SHAW, ESQ.
Florida Bar No.: 111771
KIMBERLY A. SLAVEN-HAUTH, ESQ.
Florida Bar. No.: 117964
GABRIEL E. MORALES, ESQ.
Florida Bar No.: 1038778